## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| **MAUREEN CROSS**, individually, and on behalf of all others similarly situated, | No.: |
|  | Hon. |
| Plaintiffs, |  |
| v. |  |
| **ALLY FINANCIAL INC.** |  |
| Defendant. |  |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Maureen Cross, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), by and through her attorneys, hereby brings this Collective and Class Action Complaint against Ally Financial Inc. ("Defendant"), and states as follows:

## INTRODUCTION

1.     This is a collective action that arises out of Defendant's systemic failure to compensate its employees for all hours worked, including overtime hours worked at the appropriate overtime rate, in willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*., and common law.

2.     Plaintiff and the putative collective members consist of current and former deposit operation specialists, customer solutions representatives, or similar customer service oriented positions ("Representatives"), who were compensated on an hourly basis. Throughout the relevant period, Defendant maintained a corporate

policy and practice of failing to compensate its Representatives for all pre- and post-shift off-the-clock work.

3.      Regardless of the specific job title, all Representatives: (1) are paid on an hourly basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s); (4) use many (if not all) of the same computer programs; (5) are subject to the same relevant timekeeping and attendance policies; and (6) have the primary job duty of providing assistance to Defendant's customers.

4.      Defendant required its Representatives to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Representatives only "clocked in" and received compensation *after* this preliminary work was completed, though they were required to perform this work to be "ready" when their scheduled shifts began.

5.      Defendant further required its Representatives to work after the end of their shifts, through a prescribed process of shutting down each individual software program. This work was only completed after they were "clocked out" and/or "logged off" the timekeeping system.

6.      A Representative's failure to be ready and able to take calls when the scheduled shift began would result in disciplinary action.

7.      The Representatives routinely worked 40 hours or more per week

2

before accounting for their off-the-clock work. When the off-the-clock work is included, the Representatives, even those Representatives who were scheduled and paid for only 40 hours per week, worked over 40 hours per week without the required overtime premium for all time worked over 40 hours.

8.     Defendant, through its managers, had actual and constructive knowledge that its Representatives were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its Representatives to complete this unpaid work.

9.     The U.S. Department of Labor recognizes that call center jobs, which are similar to the positions held by Defendant's Representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards, (July 2008), available at: *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers*.

10.    The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives

working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

11.     Defendant's practice of failing to compensate its Representatives for all hours worked violated the Representatives' rights under the FLSA.

12.     Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> *All current and former deposit operation specialists, customer solutions representatives, or similar positions who worked for Defendant at any time during the past three years.*

13.     Defendant is liable for its failure to pay its Representatives for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

14.     Representatives who elect to participate in this FLSA collective action seek compensation for all off-the-clock pre- and post-shift work performed for Defendant, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over Plaintiff's FLSA claim

pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

16.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

17.    Additionally, this Court has personal jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

18.    Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiff and the Representatives, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

19.    The Court has general personal jurisdiction over Defendant because Defendant conducts business within the Eastern District of Michigan and maintains a principal place of business in the Eastern District of Michigan.

20.    Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. §1391 (b) and (c) because the Defendant conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## PARTIES

21.     Plaintiff Maureen Cross is a resident of Jacksonville, Florida.  Plaintiff worked for Defendant as a deposit operations specialist from approximately November 2022 through March 2025. Plaintiff Cross worked a hybrid schedule, splitting her workweek between working in the office and working remotely.

22.     Defendant compensated Plaintiff for her services as a deposit operations specialist in the form of an hourly wage, most recently at the rate of $21.00 per hour. Plaintiff Cross signed a consent form to join this collective action lawsuit. *Exhibit A*.

23.     Additional putative Collective members were or are employed by Defendant as Representatives in different locations during the past three years and their consent forms will also be filed in this case.

24.     Defendant is a leading digital financial services company.

25.     Defendant is a corporation organized under the State of Delaware with its principal office located at 500 Woodward Avenue, Detroit, Michigan 48226.

26.     Defendant's registered agent for service is The Corporation Company located at 40600 Ann Arbor Rd, East Suite 201, Plymouth, Michigan 48170.

## GENERAL ALLEGATIONS

27.     Defendant employed hundreds of Representatives – including Plaintiff – within the past three years to assist its customers with its customer service needs.

6

28.     Defendant compensated its Representatives on an hourly basis and classified them as non-exempt employees under the FLSA.

29.     Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each Representative, including but not limited to: offer letters, paystubs, and/or other payroll records.

30.     Plaintiff Cross' typical schedule was 10:30 a.m. to 7:00 p.m., Monday through Friday, with a half-hour unpaid lunch period. As such, Plaintiff Cross' standard schedule was to work 40 hours per week. Consequently, when Plaintiff Cross worked her standard schedule, she routinely worked more than 40 hours per week due to his off-the-clock work and thus incurred overtime.

31.     Similarly, Defendant's Representative positions typically have schedules that require employees to work at least eight hours per day, on average five days each week, and 40 hours or more in a workweek. If Defendant's Representatives strictly adhere to Defendant's baseline 40-hour schedule, the Representatives' schedule results in Representatives working overtime on a weekly basis.

32.     Throughout their employment with Defendant, Plaintiff and the other Representatives' job duties included fielding inbound calls and performing a wide range of support services to those callers with questions.

33.     Once hired, Defendant provided all Representatives with training on,

*inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. The training Defendant's Representatives receive is substantially, if not entirely, the same and all Representatives are subject to the same disciplinary policies.

34.     Defendant trained all Representatives using standardized procedures and required them to comply with strict attendance and schedule-adherence policies.

35.     Representatives were required to be fully logged into Defendant's computer network, customer systems, and phone systems and ready to take calls at the exact start of their scheduled shifts.

36.     To meet this requirement, Representatives were required to perform pre-shift boot-up and login activities before clocking into Defendant's timekeeping system.

37.     Representatives were further required to be fully logged out of Defendant's computer network, customer systems, and phone systems prior to completing the shutting down process.

38.     To meet this requirement, Representatives were required to perform post-shift shutdown and log out activities after clocking out of Defendant's timekeeping system.

39.     All of Defendant's Representatives use the same or similar computer networks, software, programs, and applications in the course of performing their job responsibilities. These programs and applications are an integral and indispensable part of the Representative's work, and they cannot perform their jobs without them.

### Pre-Shift Off-the-Clock Work

40.     The pre-shift boot-up and login process generally consisted of the following steps:

   a.   The Representatives turned on or woke up their computer and logged in;

   b.   The Representatives then opened and logged into VPN remote desktop software, with dual-factor authentication;

   c.   The Representatives then opened the Salesforce software;

   d.   The Representatives then opened the Lexis software;

   e.   The Representatives then opened the Sharepoint software;

   f.   The Representatives then opened the Web CSR software;

   g.   The Representatives then opened the ADP software;

   h.   The Representatives then opened Microsoft Teams software;

   i.   The Representatives then opened their email and internet browser;

   j.   The Representatives then opened the Genesis software.

41.     The boot-up and login process described above consumed substantial time on a daily basis—typically between 15 and 25 minutes per shift, and sometimes

more—depending on system speed and the performance of Defendant's computers and programs.

42.     Notwithstanding these requirements, Defendant's timekeeping policies permitted Representatives to clock in no more than five minutes before the start of their scheduled shifts. As a result, because the required pre-shift work routinely took 15 to 25 minutes to complete, Representatives were forced to perform most of this work off the clock, prior to the time they were permitted to clock in.

43.     Representatives who failed to complete this work before their scheduled shifts were subject to discipline for tardiness.

44.     The pre-shift off-the-clock time Plaintiff and all other Representatives spend booting up and logging in directly benefits Defendant and is integral and indispensable to the Representatives' job responsibilities.

**Post-Shift Off-the-Clock Work**

45.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Representatives are required to "clock out" of Defendant's timekeeping system before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls.

46.     The off-the-clock post-shift process takes substantial time on a daily basis, with said time ranging from five to ten minutes per shift.

47.    Defendant's Representatives are also not paid for their post-shift off-the-clock work.

48.    The post-shift off-the-clock work Plaintiff and other Representatives perform is compensable, directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Representatives

49.    Despite knowing Plaintiff and all other Representatives perform this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

50.    Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Representatives log into and out of their computers each day.

51.    Because Defendant required its Representatives to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Representatives spend working for Defendant. Thus, the hours reflected on the Representatives' paystubs are also inaccurate representations of the hours they worked.

52.    Plaintiff completed these pre- and post-shift work activities before and after every shift. Consequently, Plaintiff's uncompensated pre- and post-shift work constituted overtime work every week she worked her standard work schedule as

described above.

53.   Because Plaintiff and the other Representatives typically worked scheduled shifts of at least 40 hours per week, their required pre- and post-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

**Defendant Benefitted from the Uncompensated Off-the-Clock Work**

54.   At all relevant times, Defendant required and directly benefited from the off-the-clock work performed by Plaintiff and all other Representatives in connection with the pre- and post-shift activities described above.

55.   At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Representatives.

56.   At all relevant times, Defendant was able to track the amount of time Plaintiff and all other Representatives spend in connection with pre- and post-shift work activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed.

57.   Defendant expressly trained and instructed Plaintiff and all other Representatives to perform these off-the-clock work activities when they were not "clocked in" to Defendant's timekeeping system.

58.   At all relevant times, Defendant's policies and practices deprived Plaintiff and the Representatives of wages owed for off-the-clock work activities

they performed. Because Defendant's Representatives typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

59.     Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff and the Representatives worked over 40 hours and exactly which weeks they worked under 40 hours.

60.     Defendant knew or should have known that the time spent by Plaintiff and other Representatives in connection with the off-the-clock work activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

61.     Despite knowing Representatives performed off-the-clock work before, during, and after their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

62.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of 40 hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

63.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA

on behalf of herself and on behalf of:

> *All current and former deposit operation specialists, customer solutions representatives, or similar positions, who worked for Defendant at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

64.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Representatives.

65.    Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective are not paid the full premium overtime compensation they are due when they work beyond 40 hours in a workweek and are not paid any overtime in workweeks where their time cards reflect that they work slightly less than 40 hours, such as 38 to 40 hours, but actually work in excess of forty 40 hours, for which they are due both overtime gap time and overtime.

66.    Defendant assigns and/or is aware of all the work that Plaintiff and the members of the FLSA Collective perform.

67.    Upon information and belief, Defendant utilizes a centralized payroll system which calculates overtime pay for all similarly situated employees in the same or similar manner.

68.    As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engages in a pattern, practice, and/or policy of violating the

FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of 40 hours per workweek;

    b. Willfully failing to pay overtime gap time for those unpaid hours under 40 associated with unpaid overtime; and

    c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

69.    Defendant is aware or should be aware that federal law required it to pay Plaintiff and the members of the FLSA Collective overtime premiums (computed at their regular rate of pay) for hours worked in excess of forty (40) per workweek.

70.    Defendant's unlawful conduct has been and continues to be widespread, repeated, and consistent.

71.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

15

72.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issue – the amount of uncompensated pre-shift off-the-clock work – does not vary substantially among the proposed FLSA Collective members.

73.     There are many similarly situated current and former Representatives who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

74.     Plaintiff estimates the FLSA Collective, including both current and former Representatives over the relevant time period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

75.     All of the estimations discussed herein will be refined after collective discovery is completed.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

76.     Plaintiff brings this action pursuant to Fed. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All current and former deposit operation specialists, customer solutions representatives, or similar positions who worked for Defendant at any time during the past three years***

("Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

77.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

78.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

      a.     Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each shift is compensable;

      b.     Whether the post-shift time Rule 23 Nationwide Class members spend on shutdown activities each shift is compensable;

      c.     Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

      d.     Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

79.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises

and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

80.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

81.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

82.     This case will be manageable as a Rule 23 Class action. Plaintiff and Plaintiff's counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

83.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a

categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

84.    Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq*. – FAILURE TO PAY OVERTIME

85.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

86.    At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

87.    Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

88.    At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

89.    Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

90.     Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

91.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

92.     At all times relevant to this action, Defendant required Plaintiff and the proposed Collective members to regularly perform 15 to 25 minutes or more of pre-shift work activities per shift, and five to ten minutes or more of post-shift work activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

93.     All of the off-the-clock work performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

94.     In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

95.     In workweeks where Plaintiff and the proposed Collective members worked 40 hours or more, the uncompensated off-the-clock work should have been

paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay. 29 U.S.C. § 207.

96.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how much time Representatives spent working off-the-clock to complete off-the-clock work activities, and Defendant could have properly compensated Plaintiff and the proposed Collective members for the off-the-clock work they performed, but did not.

97.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

## COUNT II
### (On Behalf of the Rule 23 Nationwide Class)
### BREACH OF CONTRACT

98.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

99.     Defendant had binding and valid contracts with Plaintiff and the Rule 23 Nationwide Class to pay for each hour worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class performed on behalf of Defendant.

100.    For example, Defendant offered to compensate Plaintiff at a minimum of $21.00 per hour if Plaintiff agreed to perform services for Defendant as a Deposit

Operations Specialist. Plaintiff accepted Defendant's offer and performed under the contract by fulfilling her job duties.

101.  Plaintiff and the Rule 23 Nationwide Class accepted the terms of Defendant's contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with pre-shift work activities, described herein.

102.  By not paying Plaintiff and the Rule 23 Nationwide Class the agreed upon hourly wage for the off-the-clock work performed, Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class.

103.  In particular, Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class by failing to pay all straight time wages for unpaid work during pay periods without overtime, also known as "gap time."

104.  Plaintiff and the Rule 23 Nationwide Classes remedies under the FLSA are inadequate in this case to the extent Defendant paid Plaintiff and the Rule 23 Nationwide Class more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

105.  Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and the Rule 23 Nationwide Class spent performing off-the-clock activities.

106.   As a direct and proximate result of Defendant's contractual breach, Plaintiff and the Rule 23 Nationwide Class were damaged in an amount to be determined at trial.

**COUNT III**
**(On Behalf of the Rule 23 Nationwide Class)**
**UNJUST ENRICHMENT**

107.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

108.   The Count is pled in the alternative to Count II *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

109.   At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

110.   Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

111.   By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, including for "gap time", Defendant was unjustly enriched.

112.   Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

113.   Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

114.   Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

115.   Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

116.   As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Maureen Cross, on behalf of herself and on behalf of the putative FLSA Collective, requests judgment as follows:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b.   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, and phone numbers of all proposed Collective members, and

permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c.   Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's common law claims (Counts II and III);

d.   Designating Plaintiff as the Representative of the FLSA Collective action and the Rule 23 Nationwide Class, and undersigned counsel as Collective/Class counsel for the same;

e.   Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.   Declaring Defendant's violations of the FLSA were willful;

g.   Declaring Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established (contractual) hourly rate;

h.   Declaring Defendant was unjustly enriched through its failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

i.   Granting judgment in favor of Plaintiff and the proposed Collective members as against Defendant and awarding Plaintiff and the proposed Collective members the full amount of damages and liquidated damages available by law;

j.   Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

k.   Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and

through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the

Federal Rules of Civil Procedure and the court rules and statutes made and provided

with respect to the above-entitled cause.

Dated: January 20, 2026                    Respectfully Submitted,

                                           */s/ Kevin J. Stoops*
                                           Kevin J. Stoops (P64371)
                                           Sommers Schwartz, P.C.
                                           One Towne Square
                                           17th Floor
                                           Southfield, Michigan 48076
                                           (248) 355-0300

                                           *Attorneys for Plaintiff and the*
                                           *putative*
                                           *Collective/Class*